**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| AGUSTIN CARRION, | DOCKET NUMBER |
| Appellant, | SF-0432-13-1460-I-1 |
| v. | |
| DEPARTMENT OF VETERANS AFFAIRS, | DATE: December 29, 2014 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Bradley J. Mancuso, Esquire, Woodland Hills, California, for the appellant.

Evan Stein, Esquire, Los Angeles, California, and Hansel Cordeiro, Esquire, Washington, D.C., for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1      The agency has filed a petition for review of the initial decision, which reversed the appellant's removal.  Generally, we grant petitions such as this one only when:  the initial decision contains erroneous findings of material fact; the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  See 5 C.F.R. § 1201.117(c).

initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2        The appellant appealed the agency's decision to remove him effective July 29, 2013, from the position of Equal Employment Opportunity (EEO) Specialist (EES), GS-260-9, based on unacceptable performance. Initial Appeal File (IAF), Tab 1. Prior to his removal, the appellant, who has a service computation date in 1979, was employed with the agency as an EES, GS-7. Based on the recommendation of the appellant's former supervisor, Tracy Strub, the appellant was promoted to an EES, GS-9, on August 26, 2012. IAF, Tab 5 at 96. On January 30, 2013, Ms. Strub notified the appellant that his performance in the critical elements entitled "Counseling, sub-element – Quality #1 & 3 and Timeliness #1, and Administrative File, sub-element – Quality" was unacceptable and she placed the appellant on a performance improvement plan (PIP). *See id*. at 72. The agency removed the appellant, effective July 29, 2013, based on unacceptable performance. *Id*. at 16, 33.

¶3      The record reflects that, as an EES, the appellant conducted fact finding inquiries into EEO allegations, serving as an EEO counselor (counselor). *Id.* at 78-84. Specifically, once an individual initiates the EEO complaint process by contacting a counselor, the complaint is assigned to an individual counselor who advises the individual of his or her right to pursue the EEO allegations, including, as applicable, the right to timely file a mixed case with the Board. The counselor then attempts to resolve the complaint through alternative dispute resolution (ADR) or other options. If the individual opts to file a formal EEO complaint, then the EES must accurately identify the claims raised by the individual, identify the responding management officials, summarize and document any resolution attempts, and assemble the counselor's report. Hearing Compact Disc (CD) (Strub testimony). Timeliness and accurate documentation are paramount throughout the process because the agency and its EES employees must comply with the timelines set forth in the Equal Employment Opportunity Commission's (EEOC) regulations as well as the EEOC Management Directive (MD). Inaccurate or incomplete reports will delay the processing of the complaint and/or cause the EEO office to incorrectly dismiss or accept issues, hindering the individual's ability to pursue his or her claim through the EEO process. *Id.*

¶4      Here, the PIP memorandum notified the appellant that he had performed unacceptably in two Critical Elements (CE) of the EES position, specifically in Counseling (CE-1) and in Administrative File (CE-2). IAF, Tab 5 at 68-70. The memorandum addressed the appellant's performance in the following sub-elements: quality of the counseling and report; quality for ADR participation; timeliness of initial contacts; properly maintaining administrative files; and accurately populating the Complaint Automated Trading System (CATS)[2] entries with data and documents. IAF, Tab 5 at 68-70. The rating system applicable to the appellant's EES position was three-tiered, rating each CE as Exceptional,

---

[2] *See* Hearing CD (Strub testimony).

Fully Successful, or Less Than Fully Successful, with Fully Successful being the minimally acceptable level of performance. *See id*. at 78-84. The PIP notice informed the appellant that, in order to achieve a Fully Successful rating for CE-1, no more than 4 percent of reviewed cases should involve instances where the written reports do not accurately reflect the claimed bases and management responses; ADR participation should be within 9 percent of the field office or the Office of Resolution Management average; and 90 percent of initial interviews must be conducted within 2 business days of the initial contact. *Id*. at 68-70. As to CE-2, no more than 4 percent of reviewed files should be incomplete or different in content compared to the CATS data entries. *Id*.

¶5        The agency issued the appellant a notice of proposed removal on June 28, 2013, stating that he had failed to meet the counseling and administrative file elements of the PIP. *See id*. at 44. The notice specified that under CE-1, three of the reports, 1207, 2083, and 2298, "required substantial review and were returned" to the appellant. *Id*. The proposal notice stated that 1207 was returned for clarification of the EEO basis; 2083 was returned twice for further identification of the EEO basis and "to ensure that data was accurately reflected in" the appellant's CATS entry; and 2298 required further review to capture a second claim. *Id*. The proposal notice explained that no more than 4 percent of reviewed reports should have had issues with articulation of claims, bases, and management responses; however, 20 percent of the reviewed reports did not accurately reflect an appropriate articulation of the claims or bases. *Id*. Regarding CE-2 and citing Note 5, the proposal notice explained that the appellant twice failed to enter the notice of right to file dates into CATS for reports; as a consequence, approximately 13 percent of his "cases contained data that was incomplete or different than the content in CATS." *Id*. The proposal notice stateed that the appellant had been advised through Note 3 "to pay closer attention to CATS" data entry. *Id*.

¶6   The appellant's response to the proposal notice did not dispute that he had made the errors, but he argued that he was not counseled during the PIP for any serious performance issues, and that he was given "verbal passes" by Ms. Strub at all evaluation points within the PIP. *See id*. at 37-40. The agency sustained the proposed removal. *Id*. at 33. On appeal, the appellant did not dispute the factual assertions. However, he asserted that his PIP reviews did not sufficiently note any CE failures and he stated that he had been told that he had passed the PIP. IAF, Tab 1.

¶7   The administrative judge found that, on their face, the performance standards for the CEs are both realistic and attainable, and that the appellant committed the errors as set forth in the proposal notice. IAF, Tab 28, Initial Decision (ID) at 11. However, the administrative judge found that the agency failed to show that the appellant was given a reasonable opportunity to improve. ID at 14-17. Specifically, the administrative judge considered the PIP review notes and found that the record did not show that the PIP directly assisted the appellant in improving the subordinate elements of the CEs identified by the agency in its proposal notice or that he was given regular assistance with identifying and addressing his deficiencies. ID at 14. The administrative judge found further that, based on the application of the 4 percent error formula to the 15 reports the appellant submitted, the appellant could not demonstrate improvement when a single error had already exceeded the 4 percent margin of error. Thus, the administrative judge did not sustain the charge of unacceptable performance. The administrative judge also did not sustain the appellant's affirmative defense of reprisal for whistleblowing. ID at 17-20. Accordingly, the administrative judge reversed the agency's removal action and ordered the agency, if a petition for review was filed by either party, to provide interim relief to the appellant, effective as of the date of the initial decision. ID at 20-22.

**INTERIM RELIEF**

¶8    When an initial decision grants the appellant interim relief, if either party files a petition for review, the agency must file a certification that it has complied with the interim relief order.  In order to comply with the interim relief order, the agency must either provide the interim relief ordered by the administrative judge, or make a determination that returning the employee to the position designated by the administrative judge would cause undue disruption to the work environment.  *See* 5 U.S.C. § 7702(b)(2)(A)(ii).  In an appeal from an adverse action that was reversed, the agency's evidence must show, at a minimum, "that it has appointed the appellant to a position carrying the appropriate title, grade, and rate of pay, *effective as of the date of the initial decision*."  *Archerda v. Department of Defense*, 121 M.S.P.R. 314, ¶ 11 (2014) (emphasis added).

¶9    Here, the agency counsel has provided a certificate of interim relief, sworn under penalty of perjury, stating that the appellant received a letter instructing him to return to duty.  Petition for Review (PFR) File, Tab 4.  The agency counsel also included a copy of a letter dated June 30, 2014, instructing the appellant to return to duty "[e]ffective July 14, 2014."  This letter does not address the period of time between the May 5, 2014 issuance date of the initial decision, and the appellant's July 14, 2014 return to work.  *Id*.  Thus, there is a question as to whether the agency has shown that it has fully complied with the interim relief order.  If an agency fails to establish its compliance with the interim relief order, the Board has discretion to dismiss its petition for review, but need not do so.  *Guillebeau v. Department of the Navy*, 362 F.3d 1329, 1332-34 (Fed. Cir. 2004); *Kolenc v. Department of Health & Human Services*, 120 M.S.P.R. 101, ¶ 11 (2013).  Under the circumstances of this case, we exercise our discretion not to dismiss the agency's petition for review because the agency has submitted evidence that it has attempted to comply with the interim relief order and, based on the outcome of our decision in this case, the shortcomings in the agency's

certification of compliance are not sufficiently serious to warrant dismissal. Therefore, to the extent the appellant is arguing that the agency's petition should be dismissed for failure to comply with the interim relief order, we deny the appellant's motion.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶10    In performance-based actions taken under 5 U.S.C. § 4303, the opportunity to improve is a substantive right. The agency must prove by substantial evidence that such an opportunity was afforded. *Adorador v. Department of the Air Force*, 38 M.S.P.R. 461, 464 (1988). Further, in *Zang v. Defense Investigative Service*, 26 M.S.P.R. 155, 157 (1985), the Board noted that an employee's right to a meaningful opportunity to improve is one of the most important substantive rights in the entire chapter 43 performance appraisal framework.

¶11    On review, the agency reasserts that the appellant was counseled about his performance during the PIP and that it provided him with a reasonable opportunity to demonstrate acceptable performance. PFR File, Tab 4 at 10. For instance, the agency asserts that the appellant was informed that "he should pay closer attention to updating CATS[,] specifically the dates the aggrieved [party] accepts or declines [ADR], [as] both of these elements are monitored." *Id*. at 8. The agency also asserts that the appellant was informed that one counselor report that he submitted to management was being returned to him for more information so that a "third party can understand the document without additional context." *Id*. at 9.

¶12    We have considered the agency's arguments on review concerning the administrative judge's weighing of the evidence; however, the applicable law and the record evidence support the administrative judge's findings that the agency failed to show by preponderant evidence that it afforded the appellant a reasonable opportunity to demonstrate acceptable performance for CE-1 and CE-2. Thus, we discern no reason to reweigh the evidence or substitute our

assessment of the record evidence for that of the administrative judge. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when the administrative judge considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

¶13        Specifically, the administrative judge thoroughly analyzed the PIP notes and found that, while the proposal notice identifies that several reports were returned for corrections, the record fails to reflect that the PIP focused on these mistakes and provided any assistance or direction, even while the appellant provided one report for a third submission. ID at 15. For instance, the administrative judge noted that, while one report states that the appellant should pay closer attention to initial interview dates in CATS, it specified that none of the submitted reports required any major modifications and that all were timely submitted. The administrative judge found that the first three PIP meeting notes did not indicate that the appellant was failing to capture the claims or bases for the EEO complaints, nor did they state that the appellant might exceed the maximum rate for incomplete or differing CATS entries as specified in the proposal notice. ID at 14-15. The administrative judge found further that Note 4 specifically states that the appellant was continuing to take timely actions in his work and it did not raise any quality concerns, adding that the appellant showed marked improvement. ID at 15. The administrative judge found that, while Note 5 states that report 1207 was returned for more information and two other unspecified reports were returned because the notice of right to file dates were not captured in CATS, no other specific data entry concerns were raised and Ms. Strub noted the appellant's otherwise marked improvements and fully successful performance. ID at 15. Finally, regarding Note 6, the administrative judge found that, while it indicated that report 2083 was returned twice for more information and correction of the basis, it too states that the appellant's work was timely and

that he was otherwise continuing to improve. ID at 15. In addition, the administrative judge found that, while Notes 5 and 6 indicated that reports 1207 and 2083 were returned for corrections and the appellant was provided the opportunity to resubmit the reports, there is nothing in the record to describe the agency's efforts to address and assist the appellant with identifying and correcting the deficiencies in those reports. Thus, while the agency's proposal notice relied on reports 1207 and 2083 as evidence of the appellant's unacceptable performance in CE-1, the administrative judge found little evidence that the appellant was assisted with these deficiencies during the PIP period. ID at 15.

¶14     Moreover, the administrative judge found that, once the errors in reports 1207 and 2083 were identified and returned, it was unclear how the appellant could have demonstrated improved performance because the acceptable error rates were already exceeded. Specifically, the administrative judge found that CE-1 of the PIP was based on 4 percent of the number of cases the appellant submitted, and, by the time the appellant learned of his first report deficiency as specified in Note 5, he already would have exceeded the 4 percent standard set forth under CE-1 for quality based solely on the fact that the identification of this first error alone would have caused the appellant to fail the first CE with a 6.67 percent error rate. Thus, based on the aggregate count of the cases evaluated, the appellant would have exceeded the 4 percent margin for error with a single error even if he made no similar errors. The administrative judge concluded that, under the reasoning and the method of the PIP involving 15 reports, it was unclear how the appellant was afforded a reasonable opportunity to demonstrate acceptable performance with respect to the relevant quality sub-element within CE-1 when the first identification of an error resulted in the failure of this CE. Thus, the administrative judge found that the agency failed to show by substantial evidence that it afforded the appellant a reasonable opportunity to demonstrate acceptable performance for CE-1. ID at 16.

¶15     Similarly, the administrative judge found that, concerning CE-2, by the time the appellant was first informed that a notice of right-to-file field in CATS was not properly entered, he had had already exceeded the 4 percent standard set forth under CE-2 for quality. The identification of this first error alone would have caused the appellant to fail the CE-2 with a 6.67 percent incomplete rate, even if he made no other similar errors.

¶16     On review, the agency challenges the administrative judge's determination that, by the time the appellant's errors were first identified, the acceptable rates were exceeded. PFR File, Tab 4 at 10. The agency argues that the appellant knew that his error rates were based on the number of case counselor reports he submitted and that the agency could not control his error rate "other than to extend his PIP period until he submitted at least 26 counselor reports" which, as the administrative judge found, was a number that would allow the appellant room to make an error in a case without failing his PIP. The agency argues that, because the only controlling factor was the number of counselor reports that the appellant submitted during the PIP, the appellant could have made more than one error if he had submitted more counselor reports during the PIP period. *See id.* at 13.

¶17     However, the Performance Plan for the position of EES, GS-9, explicitly states that, "[a]t the entry level, counselor trainees may be assigned and expected to manage a monthly inventory of 6 to 8 counseling events. One mediation session will be credited as a counseling episode." IAF, Tab 4 at 19. The counseling quality element does not specify or require an EES, GS-9, non-counselor trainee to submit a specific number of cases monthly, nor does it identify the monthly inventory. Thus, even if the appellant, who had been in the EES GS-9 position for roughly 6 months when placed on a PIP, had submitted the high end of the expected number of monthly inventory for a counselor trainee, i.e., 8 counseling events, he still would not have submitted enough cases to allow

him room to make more than one error. Thus, we find no merit to the agency's argument.

¶18    Finally, while the agency contends that the administrative judge implied that the agency's standards were absolute because a single incident of poor performance would result in an unsatisfactory rating on a critical element, we disagree. Rather, the administrative judge found that, while "on its face the performance standards for the CEs are both realistic and attainable," here, the application of the 4 percent margin of error to 15 counseling events during a 90-day period precluded the appellant from being afforded a reasonable opportunity to demonstrate acceptable performance. While the agency disagrees with the administrative judge's findings in this regard, we find that the administrative judge thoroughly addressed the record evidence, as well as the hearing testimony, which support his findings. Thus, because the agency has failed to prove by substantial evidence that the appellant received the statutorily required meaningful opportunity to improve, we conclude that the administrative judge correctly reversed the appellant's removal. *Cf. Zang*, 26 M.S.P.R. at 157 (chapter 43 demotion could not be sustained for the agency's failure to give the employee sufficient opportunity to improve, in light of evidence that counseling sessions given to the employee by her supervisor were often disparaging in nature, did not produce guidance or advice on how to improve, and were not used to warn her of the possibility of an impending performance-based action).

## ORDER

¶19    We ORDER the agency to cancel the removal action and to restore the appellant effective July 29, 2013. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶20    We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel

Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶21 We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶22 No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶23 For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

**NOTICE TO THE APPELLANT REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS**

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at Title 5 of the United States Code (U.S.C.), sections 7701(g), 1221(g), 1214(g) or 3330c(b); or 38 U.S.C. § 4324(c)(4).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your attorney fees motion with the office that issued the initial decision on your appeal.

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right.  It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the United

States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD: _____

William D. Spencer
Clerk of the Board

Washington, D.C.



| | **DFAS CHECKLIST** |
|---|---|
| | **INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |

AS CHECKLIST: INFORMATION REQUIRED BY IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63)
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.